**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

WILLAMINA BARCLAY, KRISTINA GREEN, JENNIFER HATCH, and DAZARIA PARKS, *on behalf of themselves and all persons similarly situated*,

Plaintiffs,

-against-

AMAZON.COM SERVICES, LLC,

Defendant.

No. _______

**CLASS ACTION COMPLAINT & JURY DEMAND**

Plaintiffs Willamina Barclay, Kristina Green, Jennifer Hatch, and Dazaria Parks, by and through their undersigned counsel, A Better Balance and Emery Celli Brinckerhoff Abady Ward & Maazel, LLP, on behalf of themselves and all others similarly situated, allege the following against Defendant Amazon.com Services, LLC ("Amazon"):

## INTRODUCTION

1. This case arises from Amazon's systematic, company-wide failure to accommodate pregnant workers and its deliberate policies of retaliation against workers who seek pregnancy accommodations.

2. Amazon is one of this country's largest employers, with over 1.1 million workers nationwide. It is no surprise that many of its workers become pregnant. It knows it must comply with the federal Pregnant Workers Fairness Act (the "PWFA"), which provides critical legal protections so pregnant workers can equally participate in the workforce. *See* 42 U.S.C. § 2000gg. *et seq*. Yet Amazon violates the law at every turn.

3. Plaintiffs Willamina Barclay, Kristina Green, Jennifer Hatch, and Dazaria Parks were formerly Amazon warehouse employees.[1] All four became pregnant. All four asked Amazon for basic pregnancy-related accommodations so they could keep doing their jobs. Amazon denied them basic modifications the law recognizes pregnant workers regularly need, even in uncomplicated pregnancies: Bathroom breaks. An extra 15-minute break. Sitting instead of standing.

4. When Plaintiffs sought accommodations, Amazon applied its unlawful policy of demanding medical paperwork for every pregnancy-related accommodation request, no matter how basic. This is no small ask: In early pregnancy, it can take weeks to schedule a doctor's visit or obtain a medical note. The U.S. Equal Employment Opportunity Commission ("EEOC"), the agency charged with implementing and enforcing the PWFA, has instructed employers that it is unreasonable and unlawful to demand medical documentation, "beyond self-attestation, when a worker is pregnant and seeks . . . commonly sought accommodations that are widely known to be needed during an uncomplicated pregnancy."[2] But Amazon ignores the law, forcing pregnant employees to continue working without modifications, at great risk to their health.

5. Then, when Plaintiffs took medically-necessary breaks or absences to get off their feet, visit the doctor, or go to the emergency room, they were punished. Amazon deducted their limited bank of *un*paid time off. Soon enough, they had depleted that limited bank of "unpaid time off," and Amazon threatened to terminate them.

---

[1] For purposes of this Complaint, the term "warehouse" refers to any logistics facility, packing or processing facility, sortation center, delivery station, or fulfillment center where Amazon employs hourly workers.
[2] Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29096 (Apr. 19, 2024) (to be codified at 29 CFR Pt. 1636), https://www.federalregister.gov/d/2024-07527.

6. Amazon also punished Plaintiff Green for pumping in Amazon's lactation room, deeming her time spent pumping as "inactive," as if she were ignoring her work responsibilities, flagging her for excessive "time off task" accordingly, and issuing a threat of termination.

7. Shortly after issuing these threats of termination, Amazon unlawfully terminated each of the Plaintiffs pursuant to its punitive policies.

8. The four named Plaintiffs' experiences are not unique: They result from Amazon's unlawful policies that harm pregnant workers who need accommodations. In 2025 alone, A Better Balance fielded dozens of calls from pregnant Amazon employees who said that Amazon had denied them basic accommodations such as chairs, breaks, and time off for prenatal appointments.

9. This suit seeks reforms of Amazon's policies on behalf of Plaintiffs and a class of similarly situated workers, as well as compensation for past and ongoing violations of the law.

10. Specifically, Plaintiffs challenge two of Amazon's policies. *First*, when pregnant workers seek basic and predictable accommodations that should be granted as a matter of course, such as bathroom breaks, water breaks, or opportunities to sit, Amazon's policy is to demand medical documentation (the "Medical Documentation for Predictable Assessment Policy"). Amazon refuses to provide even basic accommodations until the pregnant worker provides a doctor's note. That policy violates the law, as it constitutes an unreasonable delay in granting a reasonable accommodation.

11. As the EEOC has explained, these basic accommodations—known as "predictable assessments"—"are widely known to be needed during an uncomplicated pregnancy."[3] And "documentation" would not be easily obtainable or necessary: "early in pregnancy, employees

[3] *Id.*

and applicants are less likely to have sought or been able to obtain an appointment with a health care provider for their pregnancy . . .[and] they may not be able to obtain an appointment with a health care provider repeatedly on short notice for every limitation, as each becomes apparent."[4] As a result, pregnant workers are forced to work through their pregnancies without modifications, risking their health and safety, or accrue negative time balances under Amazon's attendance policies, risking their employment.

12. *Second*, Amazon punishes pregnant workers who require time off or breaks for pregnancy-related conditions, though such leave is legally protected. Specifically, Amazon applies its two attendance policies—the Unpaid Time Policy ("UPT") and the Time Off-Task Policy ("TOT")—that impose disciplinary penalties for *legally protected* absences and breaks. Through its UPT policy, Amazon deducts pregnancy-related breaks and absences—including breaks that have been formally approved as a protected accommodation—from workers' limited UPT bank of time. Amazon also fails to account for legally protected pregnancy-related breaks, such as breaks for pumping, causing workers to accrue "time off task" per the TOT policy and face possible termination.

13. The pregnancy-related penalties in the UPT and TOT systems are then used as a basis to threaten termination, and, in many instances, actually terminate pregnant workers (the "Punitive Attendance Policy"): Amazon threatens—and regularly fires—employees who exceed the thresholds of these point systems.

14. These termination threats punish workers for attempting to exercise their PWFA-protected rights and interfere with pregnant workers' exercise of these rights: Pregnant workers are legally entitled to take breaks during the workday or make basic modifications to how they

[4] *Id.*

perform their duties without facing penalties. Pregnant workers are also entitled to be absent from work for pregnancy-related needs without penalties.

15. Amazon's discriminatory and retaliatory policies are well-documented and have been decried by the EEOC. For example, in February 2026, in evaluating Plaintiff Hatch's Charge of Discrimination, the EEOC found reasonable cause that Amazon "has discriminated against a nationwide class of female warehouse associates, based on their pregnancy, by failing to accommodate their limitations related to pregnancy, childbirth, and or related medical conditions, and in some instances forcing them to take leave, in violation of the PWFA."

16. Amazon's discriminatory and retaliatory policies, including Amazon's Medical Documentation for Predictable Assessment Policy, have also been the subject of multiple state investigations.

17. In May 2022, for example, the New York State Division of Human Rights filed a complaint against Amazon alleging discrimination against pregnant workers and workers with disabilities. The State Division alleged Amazon's policies force pregnant workers to take unpaid leave rather than permitting them to work with a reasonable accommodation.[5]

18. Similar violations occurred in Amazon's New Jersey warehouses. As New Jersey Attorney General Matthew J. Platkin put it: "The largest company in the world, a company that can deliver anything to your door in hours, is doing everything it can to avoid providing basic protections to the people who make those packages get to you on time."[6] Following a multi-year investigation, in October 2025, the New Jersey Attorney General sued Amazon, alleging it

---

[5] *See* Press Release, Kathy Hochul, Governor of New York, Governor Hochul Announces Complaint Filed Against Amazon (May 18, 2022), https://www.governor.ny.gov/news/governor-hochul-announces-complaint-filed-against-amazon.

[6] Grace Elletson, *NJ Accuses Amazon Of Pregnancy, Disability Discrimination*, LAW 360 (Oct. 22, 2025), https://www.law360.com/articles/2402267/nj-accuses-amazon-of-pregnancy-disability-discrimination.

engaged in a pattern or practice of discrimination against pregnant workers in its New Jersey warehouses.[7]

19. Amazon's discrimination and retaliation against workers with pregnancy-related limitations and disabilities has been widely scrutinized by elected officials and the media as well. In 2021, six senators urged the EEOC to investigate Amazon's treatment of pregnant warehouse workers, noting a "concerning pattern of mistreatment of pregnant employees," a "systemic failure to provide adequate accommodations," and a practice of punishing workers for pregnancy related medical needs.[8] A 2023 report found that Amazon regularly placed workers with disabilities on involuntary leave while accommodation requests were processed, and demanded unnecessary and repeated medical documentation for routine accommodation requests.[9]

20. Yet Amazon's unlawful policies persist.

21. Plaintiffs and other Amazon employees who are currently pregnant or may become pregnant—all of whom work tirelessly to make Amazon's operations possible—should not have to choose between their health and their livelihoods. This suit seeks to hold Amazon accountable and ensure it follows the law.

---

[7] *See* Press Release, Jennifer Davenport, Attorney General of New Jersey, Attorney General Platkin and Division on Civil Rights File Complaint Against Amazon Alleging Widespread Pattern of Pregnancy and Disability Discrimination (Oct. 22, 2025), https://www.njoag.gov/attorney-general-platkin-and-division-on-civil-rights-file-complaint-against-amazon-alleging-widespread-pattern-of-pregnancy-and-disability-discrimination/.

[8] Annie Palmer, *Senators Urge Investigation Into Amazon Over Alleged Discrimination Against Pregnant Warehouse Workers*, CNBC (Sep. 10, 2021) https://www.cnbc.com/2021/09/10/senators-call-for-amazon-investigation-over-alleged-pregnancy-discrimination.html.

[9] *Disabling: How Amazon Fails Associates with Workplace Accommodations*, UNITED FOR RESPECT (July 2023), https://united4respect.org/amazon-accommodations-report-2023/.

## JURISDICTION AND VENUE

22. The Court has jurisdiction over Plaintiffs Barclay's and Hatch's federal law claims pursuant to 28 U.S.C. §§ 1331, 1343.[10] This Court has supplemental jurisdiction over Plaintiffs' claims brought under the New York Labor Law, N.Y.L.L. § 215 *et seq.* ("NYLL") pursuant to 28 U.S.C. § 1367(a).

23. Venue lies in this judicial district pursuant to 42 U.S.C. § 2000gg-2 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices complained of herein occurred within the State in which this judicial district is located.

## PARTIES

24. Willamina Barclay is a former employee of Amazon and New York resident. Ms. Barclay was hired on or around September 16, 2024, as an associate at Amazon's ROC1 warehouse in Rochester, NY, where she worked until on or around June 22, 2025. Plaintiff Barclay is of child-bearing age.

25. Kristina Green is a former employee of Amazon and New York resident. Ms. Green was hired on or around November 8, 2023, as an associate at Amazon's ROC1 warehouse in Rochester, NY, where she worked until around July 14, 2024. Amazon then rehired Ms. Green in or around September 2025 at the same worksite, where she worked until on or around May 7, 2026. Plaintiff Green is of child-bearing age.

26. Jennifer Hatch is a former employee of Amazon and New York resident. Ms. Hatch was hired on or around September 27, 2024, in a role processing customer returns at the

[10] Ms. Green's and Ms. Parks' Charges remain pending with the EEOC and 180 days have not yet elapsed since their filing. *See* 29 CFR § 1601.28(a)(1). Once that period ends, Ms. Green and Ms. Parks will request the EEOC issue them Notices of Right to Sue and will seek to amend this Complaint to add PWFA claims on their behalf, at which point this Court will have jurisdiction over Ms. Green's and Ms. Parks' federal law claims pursuant to 28 U.S.C. § 1331.

BUF9 Fulfillment Center in Lancaster, NY, where she worked until on or around March 21, 2025. Plaintiff Hatch is of child-bearing age.

27. Dazaria Parks is a former employee of Amazon and a New York resident. Ms. Parks was hired on or around April 29, 2025, as a delivery associate at Amazon's DRO2 Delivery Station in Rochester, NY, where she worked until on or around July 13, 2026. Plaintiff Parks is currently pregnant.

28. Plaintiffs Barclay, Green, Hatch, and Parks are likely to reapply for a job at Amazon because they live in a region where Amazon is a major employer. Upon information and belief, Amazon frequently rehires employees who were previously terminated for negative UPT balances and accrual of TOT minutes, among other reasons for termination.

29. Defendant Amazon.com Services LLC ("Amazon") is a Delaware-registered limited liability company registered to do business in New York and conducting business in New York. Amazon accepts service of process c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

30. Amazon is a multinational company that, upon information and belief, employs more than 1.1 million employees in the United States.

31. Upon information and belief, Amazon operates at least 30 logistics facilities in the State of New York, including but not limited to, fulfillment centers, delivery stations, and sorting facilities (collectively, "warehouses"). At these warehouses, workers rapidly code, pick, pack, sort, and organize items for delivery. At the time of the filing of this Complaint, Amazon operates at least 20 facilities in this district. At all relevant times, Plaintiffs were qualified employees and Defendant was a covered entity and employer as defined in the PWFA and NYLL.

## JURY DEMAND

32. Plaintiffs demand a jury trial.

## FACTS

***The Pregnant Workers Fairness Act***

33. Congress passed the PWFA in December 2022 to ensure workers affected by pregnancy and related conditions can remain on the job, including by requiring employers to provide simple accommodations quickly. It requires covered entities to make reasonable accommodations for qualified employees affected by pregnancy, childbirth, lactation, or related medical conditions and limitations so long as doing so does not create an undue hardship on the entity's operations.[11]

34. The PWFA also makes it unlawful to require a qualified employee to take leave—paid or unpaid—if a reasonable accommodation can be provided for the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee. Covered entities are prohibited from taking adverse action against workers who request or use reasonable accommodations and are prohibited from interfering with a worker's PWFA-protected rights.

35. The PWFA is intended to ensure that pregnant workers can request and receive necessary, commonsense accommodations to prevent health problems without providing a doctor's note. A pregnant worker should be able to gain access to water and the bathroom without delay or a cumbersome process, since failure to accommodate can jeopardize her health or her pregnancy, sometimes even seriously or irreparably.

[11] For purposes of this Complaint, the term "pregnant worker" or "pregnant employee" shall include employees who are pregnant and/or were recently pregnant and had pregnancy-related limitations or physical or mental conditions related to, affected by, or arising out of pregnancy and childbirth.

36. As described by Rep. Jerrold Nadler, lead House champion of the bill, "[t]hese accommodations are short in duration and typically cost very little to provide. However, for millions of pregnant workers, they are critical. A simple accommodation could mean the difference between staying on the job or being forced out on leave. The difference between keeping the health insurance and paycheck or putting their pregnancy at risk."[12]

37. In passing the PWFA, Congress sought to streamline the accommodations process for pregnant workers, to ensure that simple accommodations such as "seating, water, and light duty" would be provided quickly and emphasizing the importance of such accommodations so that pregnant employees are not "forced to choose between their financial security and a healthy pregnancy," as the legislative history indicates.[13] For example, the House Committee Report on the PWFA bill cited a 2014 survey that estimated that over 250,000 pregnant workers were denied reasonable accommodations annually. That same year, the most requested, pregnancy-related accommodation was more frequent bathroom breaks—an accommodation that could easily be granted without delay.[14]

38. The EEOC, the agency charged with implementing and enforcing the PWFA, has issued a final rule and interpretive guidance explaining employers' obligations to provide reasonable accommodations for pregnancy-related limitations, relying on Congress's intent in passing the PWFA.[15] In its guidance, the EEOC recognized: "Particularly early in pregnancy,

---

[12] Long Over Due: Exploring the Pregnant Workers' Fairness Act, H.R. 2694, 116th Cong. (2019), https://www.congress.gov/event/116th-congress/house-event/LC67567/text.
[13] Pregnant Workers Fairness Act, H.R. Rep. 117-27, pt. 1 at 11 (2021), https://www.govinfo.gov/content/pkg/CRPT-117hrpt27/pdf/CRPT-117hrpt27-pt1.pdf.
[14] *Id.*
[15] E.E.O.C., Summary of Key Provisions of EEOC's Final Rule to Implement the Pregnant Workers Fairness Act (PWFA), https://www.eeoc.gov/summary-key-provisions-eeocs-final-rule-implement-pregnant-workers-fairness-act-pwfa (last visited July 30, 2026); *see also* Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29096 (Apr. 19, 2024) (to be codified at 29 CFR Pt. 1636), https://www.federalregister.gov/d/2024-07527; 29 C.F.R. § 16363.3.

employees and applicants are less likely to have sought or been able to obtain an appointment with a health care provider for their pregnancy. Further, they may not be able to obtain an appointment with a health care provider repeatedly on short notice for every limitation, as each becomes apparent."[16]

39. Requiring medical documentation for simple modifications, like bathroom breaks, unreasonably delays—and in some cases denies entirely—the provision of reasonable accommodation to many pregnant workers.

40. Accordingly, the PWFA provides: "An unnecessary delay in providing a reasonable accommodation to the known limitations related to pregnancy, childbirth, or related medical conditions of a qualified employee may result in a violation of the PWFA if the delay constitutes a failure to provide a reasonable accommodation."[17]

41. Reflecting the PWFA's text, the EEOC's final rule identifies a category of accommodations—referred to as "predictable assessments"—that will "in virtually all cases" qualify as reasonable accommodations and will not impose an undue hardship on the employer because they are modest, low-burden, and low-cost adjustments to workplace operations.[18]

42. The EEOC rule specifically identifies four such predictable assessments: (a) permitting an employee to carry and drink water as needed; (b) permitting additional restroom breaks as needed; (c) permitting an employee whose job requires standing to sit, and an employee whose job requires sitting to stand, as needed; and (d) permitting breaks to eat and

---

[16] Regulations To Implement the Pregnant Workers Fairness Act, 88 Fed. Reg. 54714 (Aug. 11, 2023) (to be codified at 29 CFR Pt. 1636), https://www.federalregister.gov/documents/2023/08/11/2023-17041/regulations-to-implement-the-pregnant-workers-fairness-act.

[17] 42 U.S.C. § 2000gg-1(1) and § 1636.4(a)(1).

[18] 29 C.F.R. § 16363.3(j)(4)(i)-(iv) (2024).

drink as needed. These modifications are commonly-sought, near-universal needs arising from widely known limitations that attend even uncomplicated pregnancies.

43. The EEOC explains that these accommodations are simple, routine modifications that "in virtually all cases" involve minimal or no cost, operational disruption, or administrative burden.[19]

44. The EEOC also explains that it is not reasonable to request medical documentation of accommodations related to lactation, nursing, and pumping needs—all of which constitute pregnancy-related conditions under the PWFA.

45. Where an employee affected by pregnancy and pregnancy-related conditions requests one of these basic predictable assessments, the EEOC's authoritative rule indicates that an employer's failure to provide those basic accommodations will ordinarily constitute a violation of the PWFA.

46. Given that predictable assessments will be deemed reasonable accommodations "in virtually all cases," it is inherently unreasonable for employers, including Amazon, to demand medical documentation prior to granting a predictable assessment request or a request related to lactation, pumping, or nursing, and to delay granting such accommodations. *See id.*

47. The EEOC's guidance and rule provide that an employer "is only permitted" to seek supporting medical documentation "if it is reasonable to require documentation under the circumstances for the employer to determine whether the employee (or applicant) has a physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions (a limitation) and needs a change or adjustment at work due to the limitation."[20]

---

[19] *Id.*

[20] *Supra note* n.15.

48. A medical documentation requirement is notably absent from the text of the PWFA because such documentation should not be routinely required for PWFA accommodations.

49. As the EEOC stated: "It is not reasonable to require documentation, beyond self-attestation, when a worker is pregnant and seeks one of the four listed modifications [bathroom breaks, food/drink breaks, seating, and standing] because these are a small set of commonly sought accommodations that are widely known to be needed during an uncomplicated pregnancy and where documentation would not be easily obtainable or necessary."

50. This reflects the PWFA's requirement that accommodations cannot be unreasonably delayed and is "consistent with the overarching goal of the PWFA to assist workers affected by pregnancy to remain on the job by providing them with simple accommodations quickly."

51. Despite the PWFA's requirements, Amazon's policy is to unlawfully demand medical documentation prior to granting predictable assessment requests and unreasonably does not provide predictable assessments to qualified employees pending such documentation.

***Amazon's Widespread Practice of Violating Pregnant Workers' Rights***

52. Despite being a major national employer, after passage of the PWFA, Amazon took few, if any, steps to ensure compliance with the PWFA after its passage in 2022.

53. According to the New Jersey Attorney General's investigation, despite the passage of the PWFA, Amazon has not trained its Human Resources or Disability & Leave Services ("DLS") staff on responding to PWFA accommodation requests; or modified its policies to protect pregnant workers and workers with other limitations covered by the PWFA.

Amazon also did not prepare PWFA-specific training materials or handbooks to inform workers of their rights.[21]

54. Instead, Amazon automates accommodations requests through its centralized DLS group without regard for PWFA compliance.[22] The New Jersey Attorney General's investigation found that the DLS system requires an employee to submit all accommodation requests through the online platform.[23] The system demands medical documentation for *every* request—including requests by pregnant workers for basic accommodations that are predictable assessments—and will cancel a request for failure to provide documentation after seven days.[24]

55. The New Jersey Attorney General has found Amazon violated the law and brought suit based on the same Medical Documentation for Predictable Assessment policy challenged here.[25]

56. The New Jersey Attorney General's investigation also found that Amazon punished pregnant workers by forcing them on leave: while an employee's request is pending, Amazon's accommodation policy often involves placing the worker on unpaid, involuntary leave. And if a request is denied (including denials based on failure to provide medical documentation), the worker will be placed on an unpaid leave of absence or unpaid "leave as an accommodation."[26] These practices "are flatly contrary" to PWFA requirements because "involuntary leave is not a legal accommodation" under the law where accommodations are available that allow the employee to work, as the New Jersey Attorney General found.[27]

[21] *See generally* Comp. and Jury Demand, *Matthew J. Platkin, et. al, v. Amazon.com Services LLC*, No. ESX-L-008093 (N.J. 2025) Dkt. No. LCV20252848818.
[22] *Id.*¶ 33.
[23] *Id.* ¶ 37.
[24] *Id.* ¶¶ 38-39.
[25] *See supra* n.21.
[26] *See supra* n.21 at ¶¶ 40-43.
[27] *Id.* at ¶ 52.

57. While Plaintiffs here were not forced into involuntary leave due to their pregnancies, the New Jersey Attorney General's findings that Amazon penalizes pregnant and lactating employees who seek accommodations is consistent with Amazon's policy of demanding unreasonable medication documentation and its punitive application of the UPT and TOT policies Plaintiffs challenge.

***Amazon's Medical Documentation for Predictable Assessment Policy: Amazon Unreasonably Delays and Denies Basic Accommodations***

58. As detailed above, predictable assessments should be granted as a matter of course for pregnancy-related limitations. Amazon's Medical Documentation for Predictable Assessment Policy, however, is to automatically demand medical documentation for every accommodation request—regardless of whether a pregnant employee attests to their pregnancy-related limitation and need for a predictable assessment.

59. According to the New Jersey Attorney General: "where the denial [of a request] is based on an employee's purported failure to provide sufficient medical documentation, Amazon includes the following stock language in its accommodation denial letter: '[I]t was determined that you were unable to provide sufficient documentation to support your accommodation request by its due date and therefore, require a leave of absence.'"[28]

60. Amazon's refusal to grant any predictable assessment requests absent medical documentation violates the PWFA because it constitutes an unreasonable delay in the provision of a reasonable accommodation.

61. Amazon's Medical Documentation for Predictable Assessment Policy causes pregnant workers to forgo accommodations that they are entitled to, forcing them to choose between a leave of absence or working without accommodation and risking injury or their health.

[28] *Id.* ¶ 59.

***Amazon Applies its UPT and TOT Attendance Policies Punitively to Workers Covered by the PWFA***

62. Amazon subjects its hourly workers to a strict absence-control policy and a strict time-off-task policy. These policies—the UPT Policy, TOT Policy, and Punitive Attendance Policy—are automated and widespread across its warehouses, and its attendance-related decisions are made remotely from DLS, not based on any specific worksite.

63. *First*, workers are given a bank of a certain number of Unpaid Time Off ("UPT") hours. An employee who uses up her UPT bank of hours or accrues negative UPT time faces termination. Specifically, once an employee's UPT balance is exhausted, the employee enters "negative UPT." Amazon then automatically emails the employee ("Termination Warning Emails") as part of its Punitive Attendance Policy, threatening that, unless the employee satisfactorily explains the absences within 48 hours, Amazon will take adverse action under its disciplinary policy, up to and including termination.

64. Amazon's automated UPT system (hereinafter referred to as the "UPT Policy") penalizes all employees who miss work while awaiting Amazon's response to their pregnancy-related accommodation requests. When a pregnant worker needs to take time off from work due to her pregnancy—such as taking a 15-minute break during a shift (a predictable assessment that should be granted in virtually all cases)—Amazon punishes the worker by deducting from her bank of job-protected UPT and then applies its Punitive Attendance Policy.

65. Amazon's Punitive Attendance Policy, carried out by its centralized accommodations department DLS, sends pregnant workers Termination Warning Emails with their negative UPT balances and explicit threats of termination.

66. The Termination Warning Emails require employees to submit additional documentation, specifically medical documentation, which they are often unable to obtain quickly, or face discipline, including termination.

67. *Second*, Amazon has a companion policy regarding "time off-task" or "TOT" while someone is at work (the "TOT Policy"). Public reporting indicates that Amazon uses radio-frequency handheld scanners to track and record every minute of a worker's TOT, *i.e.*, "idle" time spent at work. Examples of TOT include, *inter alia*, "talking to another Amazon associate," going to the bathroom, or other time not spent scanning items.[29]

68. Further, workers "can receive a written warning for accumulating 30 minutes of time off task in a day one time in a rolling one-year period. They can be fired if they accumulate 120 minutes of time off task in a single day *or* if they have accumulated 30 minutes of time off task on three separate days in a one-year period."[30]

69. As part of Amazon's Punitive Attendance Policy, employees receive "final" Termination Warning Emails when they reach a certain threshold of TOT time; these emails threaten employees that they have "violated Amazon's standards of conduct" and that they will be terminated imminently absent documentation.

70. Despite the PWFA's protections, Amazon's Punitive Attendance Policy penalizes workers for time spent off task while dealing with pregnancy-related conditions, including pumping, and then threatens them with termination. Workers who are "off task" because they are taking a lawfully protected break due to pregnancy-related conditions are penalized with TOT deductions and then threatened with termination.

---

[29] *See* Lauren Kaori Gurley, *Internal Documents Show Amazon's Dystopian System for Tracking Workers Every Minute of Their Shift*s, VICE (June 2, 2022), https://www.vice.com/en/article/internal-documents-show-amazons-dystopian-system-for-tracking-workers-every-minute-of-their-shifts/.

[30] *Id*.

71. This violates the EEOC's rule implementing the PWFA, which explains that, in order for an accommodation to be effective, employers must prorate productivity requirements to account for an employee's use of leave or break time as a reasonable accommodation.[31]

***Retaliatory Intent and Impact of Amazon's Policies***

72. Pregnant workers who require breaks or leave while they await decisions on their accommodation requests are uniformly penalized by Amazon's UPT and TOT Policies, as Amazon automatically applies UPT deductions and TOT accruals to a worker's time banks, regardless of whether a pregnant worker has a pregnancy-related limitation that prevents them from working without an accommodation.

73. Even when a pregnant worker's accommodation is granted, Amazon retaliates against workers for using their legally protected breaks and leave time by applying the UPT and TOT Policies to the time off, and its Punitive Attendance Policy results in formal discipline and/or termination.

74. Amazon's UPT and TOT Policies, and their punitive application through the Punitive Attendance Policy, also unlawfully interfere with and chill pregnant workers' exercise of their legal rights because they justifiably fear that requesting reasonable accommodations or taking legally protected breaks and time off will subject them to discipline and/or termination.

75. Likewise, requiring medical documentation prior to granting any accommodation and using scanners in real-time to deduct TOT time for legally protected breaks actively

[31] *See* Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29096 (Apr. 19, 2024) (to be codified at 29 CFR Pt. 1636), https://www.federalregister.gov/d/2024-07527 ("Thus, if the reasonable accommodation is leave, the production standard may need to be prorated to account for the reduced amount of time the qualified employee worked.").

interferes with pregnant workers' right to request accommodations, have their accommodations approved in a timely manner, and be able to continue working with accommodations.[32]

***Amazon Denied Plaintiffs Pregnancy-Related Accommodations and Penalized Them***

76. Plaintiffs Barclay, Green, Hatch, and Parks are all former workers in Amazon facilities who Amazon delayed, and thus denied, pregnancy-related accommodations and unlawfully penalized them through its Punitive Attendance Policy for absences and time off under Amazon's UPT and TOT Policies, including for time associated with pregnancy-related breaks, and then retaliated against them by threatening termination.

***Willamina Barclay***

77. In September 2024, Plaintiff Barclay was hired to work at Amazon's ROC1 warehouse as a "picker," a job involving, *inter alia*, carrying large boxes of dense, heavy items, such as cat litter and dog food; squatting repetitively to lift the boxes; and climbing and descending ladders.

78. In or around early March 2025, Ms. Barclay learned she was pregnant.

79. Ms. Barclay's medical provider designated her pregnancy as high-risk because she is over the age of 35 and experienced a recent miscarriage. Ms. Barclay's medical provider also diagnosed her with a number of pregnancy-related medical conditions, including preeclampsia and hyperemesis gravidarum.

80. As a result of her pregnancy-related medical conditions, Ms. Barclay felt dizzy when she stood for long periods of time; needed to drink water and use the bathroom more frequently than usual; and was limited in her capacity for strenuous physical exertion.

---

[32] *See* 29 CFR § 1636.3(l)(1)(iii); Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29096 (Apr. 19, 2024) (to be codified at 29 CFR Pt. 1636), https://www.federalregister.gov/d/2024-07527.

81. In or around early April 2025, Ms. Barclay submitted requests for reasonable accommodation for her pregnancy and related medical conditions to DLS. Specifically, Ms. Barclay asked for a seated position, extra breaks, no repetitive squatting, no climbing ladders, and a 15-pound limit on the weight she is required to lift.

***Amazon Violates Ms. Barclay's PWFA Rights By Demanding Medical Documentation for Predictable Assessments***

82. Despite the PWFA's requirements and the clarity of the EEOC's regulations, Amazon failed to promptly provide Ms. Barclay with the predictable assessments she requested. Instead, over the ensuing weeks, Amazon sent Ms. Barclay repeated emails seeking additional information and medical documentation to support her basic accommodation requests.

83. Ms. Barclay was not able to secure a medical appointment for several weeks, and in the meantime, continued to request predictable assessments from Amazon, including permission to take sitting breaks. Despite informing DLS and her supervisors that she was pregnant, Amazon refused to provide Ms. Barclay with any interim adjustments to her strenuous work, or even a chair to sit on, in the absence of medical documentation.

84. During this unreasonable delay while Ms. Barclay was forced to continue working without basic accommodations, Ms. Barclay felt lightheaded at work. She pleaded with a manager for a seat—a delineated predictable assessment—in light of her disclosed and obvious pregnancy. He refused: "No, because you don't have an accommodation. If I give *you* a chair, I have to give everybody *else* a chair."

85. Amazon continued to require Ms. Barclay to bend repeatedly to lift heavy boxes, climb ladders, and stand for long periods, causing her severe pain, dizziness, and stress. And Amazon never approved Ms. Barclay for a seated role or a chair at her workstation, contrary to

the EEOC's rule that "allowing an employee whose work require standing to sit . . . as needed" is a predictable assessment.[33]

86. Upon information and belief, seated roles consistent with Ms. Barclay's physical restrictions were in fact available. Instead, Amazon continued to force Ms. Barclay to perform work that threatened her safety.

87. On or about April 23, 2025, Ms. Barclay dutifully submitted medical documentation from her provider to support her original requests. Approximately a week later, Amazon approved some but not all of Ms. Barclay's requested predictable assessments, permitting her to take four extra 15-minute breaks per day, but did not permit Ms. Barclay to take breaks to sit "as needed," and did not permit her to have a chair, which caused further strain to her back.

88. A few days after May 1, 2025, Amazon formally approved Ms. Barclay's remaining accommodations and switched her from a "picker" to a "packer" role. However, despite ostensibly granting her request for accommodations, the new role involved almost all of Ms. Barclay's restricted movement patterns. She was still forced to stand for long periods, squat repetitively, and lift heavy boxes. The "packer" role also involved carrying heavy totes to Ms. Barclay's worksite from a different location, causing further strain to her back.

89. Throughout April and May 2025, Ms. Barclay raised the lack of effective accommodations with several managers and members of Amazon's Human Resources (HR) staff. HR, DLS, and other supervisors all refused to help Ms. Barclay, despite acknowledging that she shouldn't be lifting beyond her weight restriction and admitting that Amazon had positions for pregnant women at the warehouse.

---

[33] *Id.*

***Amazon Unlawfully Retaliates Against Ms. Barclay for Taking Protected Breaks***

90. Once Ms. Barclay's accommodation request for additional breaks was approved, she began clocking out for her approved daily breaks. However, Amazon still deducted her UPT during each of these breaks, draining her balance.

91. Ms. Barclay approached HR multiple times to attempt to remedy her UPT balance, which dwindled with every break. After a few attempts, during which various managers dismissed her concerns, a supervisor informed her she had to clock out to visit the HR office at all. Ms. Barclay feared termination for excessive UPT deductions from clocking out to go to HR.

92. On or about June 16, 2025, Ms. Barclay experienced severe abdominal pain after again being forced to lift heavy objects in violation of her accommodation needs. She limped to the Amazon Wellness desk to explain her condition and requested to leave work early. Ultimately, Ms. Barclay was wheeled from the site in a wheelchair in view of Amazon HR staff and various supervisors, and then taken to a local hospital.

93. Despite knowing that Ms. Barclay had left work to get care for a pregnancy-related medical emergency, Amazon deducted Ms. Barclay's UPT during her hospitalization. On or about June 17, 2025, Amazon also sent Ms. Barclay a Termination Warning Email threatening that her UPT was in the negative and that she could be fired.

94. When Ms. Barclay disputed her negative UPT with HR, Amazon told her its policy is that she would lose UPT due to her hospital visit because she "worked partially that day."

95. Amazon's stated policy is unlawful. Even after workers go through the arduous and unlawful requirement of submitting medical documentation for pregnancy-related accommodations requests, and even after Amazon approves the worker for a pregnancy

accommodation, Amazon still punishes the worker by deducting UPT for pregnancy-related breaks or medical visits if the worker was able to work a *portion* of the day and then sends them a Termination Warning Email. That policy makes no sense and violates the PWFA.

96. On or about June 18, Ms. Barclay experienced severe vomiting caused by her pregnancy-related condition. Ms. Barclay called out of work, providing a same-day doctor's note to explain her absence and prevent disciplinary consequences. Amazon again deducted her UPT for her pregnancy-related absence from work; these deductions eliminated her last few hours of her remaining UPT.

97. Four days later, on June 22, 2025, Amazon fired Ms. Barclay due to her negative UPT.

98. Ms. Barclay timely filed a Charge of Discrimination ("Charge") with the EEOC on October 8, 2025.

99. On August 7, 2026, the EEOC issued Ms. Barclay a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that Notice.

100. Ms. Barclay seeks reinstatement as well as all other proper and available relief requested herein.

***Kristina Green***

101. Amazon hired Ms. Green on or around November 8, 2023, as an associate at Amazon's ROC1 warehouse in Rochester, NY, where she worked until around July 14, 2024. Amazon then rehired Ms. Green in or around September 2025 at the same worksite. On May 7, 2026, Amazon terminated Ms. Green's employment for her TOT balance, which had exceeded the number of hours permitted per pay period as a result of taking breaks for pumping.

102. At the time of her September 2025 rehire, Ms. Green was about six months pregnant. Amazon assigned her to a usual assignment in the Stow department, a role which

involves climbing ladders, lifting heavy packages, and performing these tasks in compliance with demanding quantitative productivity requirements. Her duties included organizing, scanning, and stowing inventory in storage bins.

103. Promptly upon her hire, Ms. Green asked Amazon for pregnancy-related accommodations by submitting a request through DLS. Due to dangerous pregnancy-related medical conditions she was at risk of developing, she requested a role that did not involve climbing ladders or lifting more than 25 pounds. She also requested predictable assessment accommodations: extra breaks every 2 hours to eat as needed and rest her legs, and additional bathroom breaks as needed.

104. Ms. Green made these requests because she was at risk of preeclampsia, a dangerous pregnancy-related medical condition, and was taking daily medication to control her blood pressure and prevent preeclampsia.

***Amazon Violates Ms. Green's PWFA Rights By Demanding Medical Documentation for Predictable Assessments***

105. Amazon failed to promptly provide Ms. Green with the predictable assessments she requested. Instead, through its DLS, Amazon required medical documentation to approve all of her accommodation requests, including her requests for predictable assessments.

106. Ms. Green complied with this requirement, promptly submitting documentation from her medical provider to accompany her accommodation request on Amazon's A-Z app for employees.

107. Ms. Green also informed a site-level safety employee and her site-level manager that she was pregnant and needed accommodation, sharing that she had hypertension and history of fainting.

108. Again, despite the PWFA's requirements and the clarity of the EEOC's regulations, Amazon failed to promptly provide Ms. Ms. Green with the predictable assessments she requested. While Ms. Green waited to hear back about her written accommodation request, her manager allowed her *ad hoc* breaks but otherwise made no adjustments to her position, schedule, or work tasks. Ms. Green was then penalized for taking these breaks: Throughout September and October 2025, Amazon penalized Ms. Green by deducting UPT when she took pregnancy-related breaks, draining her balance.

109. Ms. Green followed up with Amazon's Human Resources department in or around late September 2025 about the status of her pending accommodation. The HR employee informed Ms. Green that her request was "fine." Ms. Green understood this exchange to mean her accommodation was granted. But HR refused to inform her floor-level managers of Ms. Green's accommodation or her limitations so they could take them into account when assigning her work, claiming "that would be a HIPAA violation."

110. Throughout September and October 2025, Ms. Green repeatedly requested that Amazon transfer her to a role that did not require heavy lifting or climbing ladders, but her transfer requests were cancelled. On at least one occasion, a manager informed her that as a new hire, Amazon would never transfer her, even as a pregnancy-related accommodation. Accordingly, Ms. Green received a Termination Warning Email regarding her negative UPT balance.

111. While Amazon continued to delay granting Ms. Green any predictable assessments, her manager continued to instruct her to "take [her] breaks." Ms. Green understood this to mean she could continue taking the *ad hoc* breaks that had earlier been verbally approved.

112. In the meantime, Ms. Green was forced to work in Stow, a highly physical role that required her to climb ladders and lift heavy items, for about two months after her original accommodation request.

113. Ms. Green's ongoing work caused flareups of her back, ligament, and sciatica pain, and caused her to feel dizzy regularly.

114. On several occasions in October 2025, Ms. Green experienced severe pain while performing heavy work in violation of her pregnancy-related needs. When she visited the Amazon Wellness Center, Amazon safety employees advised her to "just take your [parental] leave now," rather than assisting her with on-site accommodations. Ms. Green responded that she could not afford to take leave before her due date.

115. In or around November 2025, HR informed Ms. Green that Amazon had denied her original accommodation request from September 2025 without explanation.

116. Ms. Green took unpaid medical leave and gave birth on November 25, 2025. Ms. Green then took unpaid medical leave to recover from childbirth.

117. Ms. Green was able to return to work on or around January 20, 2026.

118. Upon Ms. Green's return to work, she discovered that her UPT had drained from 17 remaining hours to a negative balance due to her childbirth-related leave. This put Ms. Green at immediate risk of termination pursuant to Amazon's UPT Policy and Punitive Attendance Policy.

119. Ms. Green called Amazon's HR department to ask why it had deducted her UPT. An HR employee informed Ms. Green that the deductions were made pursuant to her recent medical leave, which the employee claimed was not documented.

120. This was false, as Ms. Green had submitted documentation indicating her due date in September 2025, and had separately informed Amazon of her need for leave to recover from childbirth shortly after giving birth.

121. Still, Amazon refused to refund Ms. Green's UPT hours.

122. Ms. Green proceeded to work extra shifts to make up the lost UPT hours to cover her negative balance and avoid imminent termination.

123. From January 2026 through March 2026, Ms. Green worked with lingering physical limitations from pregnancy and childbirth. Because of these limitations, Ms. Green could not work throughout her standing shifts without sporadic, additional breaks as needed.

124. Ms. Green informed several floor-level managers in January 2026 about these pregnancy- and childbirth-related limitations and requested extra breaks as an accommodation. Managers verbally assented to Ms. Green's requested breaks.

125. Still, Amazon site-level supervisors gave Ms. Green disciplinary writeups three times in February 2026 for taking approved breaks.

126. In or around late January 2026, Ms. Green notified a supervisor that because she had recently given birth, she needed to take regular breaks to pump breast milk. From then through May 2026, Ms. Green pumped at regular intervals in Amazon's designated lactation room at her worksite.

***Amazon Unlawfully Retaliates Against Ms. Green for Taking Protected Breaks***

127. In early April of 2026, an Amazon supervisor issued Ms. Green a disciplinary writeup for Time Off-Task ("TOT") for the so-called "inactive time" Ms. Green had spent pumping breast milk in the lactation room.

128. Ms. Green disputed the writeup with an Amazon manager at a disciplinary meeting. During the meeting, she explained that she had been spending her inactive minutes

pumping breast milk. In response, the manager instructed Ms. Green to "limit [her] time" in the lactation room to avoid further penalties, and to let a supervisor know each time she had to step away from work.

129. Ms. Green immediately complied with the request to notify a supervisor each time she stepped away, and even attempted to take shorter pumping breaks, despite her lactation needs.

130. Despite this, on or about April 20, 2026, Amazon's Human Resources sent Ms. Green a "Final Written Warning" for TOT. This warning letter indicated that as of March 25, 2026, Ms. Green had "violated Amazon's standards of conduct by having 126 minutes of unverified inactive time." That so-called inactive time was legally-protected time she had been pumping breast milk in the lactation room.

131. Amazon also deducted from Ms. Green's UPT balance for time she spent clocked out during pumping breaks. Amazon had deducted enough UPT to put Ms. Green in the negative, again placing Ms. Green at immediate risk of termination pursuant to Amazon's UPT policy.

132. On or about May 7, 2026, Amazon terminated Ms. Green's employment pursuant to its Punitive Attendance Policy. Amazon sent Ms. Green an email that day indicating that the reason for her job termination was excessive TOT.

133. Ms. Green appealed her job termination to Amazon's HR, detailing that she had been pumping in the lactation room during the calculated inactive time.

134. In response, Amazon's HR insisted Ms. Green would have needed to provide medical documentation from her doctor in order to pump at work without penalty.

135. Under the PWFA and the EEOC's "predictable assessment" framework, described above, it is *per se* unreasonable for employers to seek supporting medical documentation before providing reasonable accommodations "related to a time and/or place to pump at work, other modifications related to pumping at work." 29 C.F.R. § 16363.3(l)(1)(iv) (2024).

136. Despite this, Amazon quickly denied Ms. Green's appeal.

137. Ms. Green timely filed a Charge with the EEOC on March 27, 2026.

138. On May 14, 2026, Ms. Green filed an Amended Charge of Discrimination following her termination from Amazon.[34]

139. Ms. Green seeks reinstatement as well as all other proper and available relief requested herein.

***Jennifer Hatch***

140. Amazon hired Ms. Hatch on or around September 27, 2024, in a role processing customer returns. Ms. Hatch's role involved standing for periods of more than four hours and lifting boxes of various weights to sort their contents.

141. On or about January 19, 2025, Ms. Hatch found out she was 7 weeks pregnant.

142. Ms. Hatch's physician classified her pregnancy as high-risk due to advanced maternal age. Ms. Hatch's pregnancy also exacerbated certain preexisting medical conditions, making it more difficult than usual for her to breathe, particularly while standing for extended periods and performing strenuous activity.

143. Because of Ms. Hatch's high-risk pregnancy, Ms. Hatch's medical provider recommended that she sit down at regular intervals to prevent lightheadedness.

---

[34] Ms. Green's Charge remains pending with the EEOC, as 180 days have not yet elapsed since its filing. *See* 29 CFR § 1601.28(a)(1). Once that period ends, Ms. Green will request the EEOC issue her a Notice of Right to Sue and will seek to amend this Complaint to add her PWFA claims.

***Amazon Violates Ms. Hatch's PWFA Rights By Demanding Medical Documentation for Predictable Assessments***

144. Ms. Hatch disclosed her pregnancy and need for accommodation to one of Amazon's Operations Managers, Aisha Barnes, on or about January 20, 2025. Ms. Barnes directed Ms. Hatch to Amazon's DLS to request an accommodation. The DLS accommodations system requires medical documentation for all accommodation requests, including requests for predictable assessments, so Ms. Hatch promptly downloaded DLS's provider form to share with her medical provider.

145. Although Ms. Hatch's requests were unambiguous—a 30-pound lifting restriction, request for a sitting break for 15 minutes every four hours, and a maximum of eight hours per shift—Amazon refused to approve any of them, instead requesting additional follow-up information about her restrictions. Ms. Hatch promptly sought out another Amazon provider form—which Amazon demands when seeking clarification on an employee's request—for her provider to fill out at her next appointment, which was scheduled for a month later.

146. In the interim, Ms. Hatch requested, and Amazon repeatedly denied, simple job accommodations, including predictable assessments of 15-minute sitting breaks and rest breaks every shift, to account for her known pregnancy- and asthma-related limitations. Site-level managers ordered her to lift heavy boxes and refused her short breaks when she felt lightheaded.

147. On several occasions, Ms. Hatch experienced severe abdominal pain after standing continuously or lifting heavy items as she was instructed. When this occurred, managers advised her to go to AmCare, Amazon's onsite first aid clinic. AmCare repeatedly sent Ms. Hatch back to work without any interim accommodations.

148. In mid-February 2025, Ms. Hatch met with her provider and presented Amazon's medical form. Her medical provider's office sent further documentation to DLS via fax on or

around February 28, 2025. The second provider form restated the same work restrictions from the first form, with the addition of two more 15-minute breaks per workday given the progression of Ms. Hatch's pregnancy.

149. Amazon did not grant Ms. Hatch the accommodations—including predictable assessments—she requested, even after her medical provider submitted documentation.

150. In early March 2025, Ms. Hatch tried to sit down in an available chair while performing her job tasks because she was struggling to breathe. A site-level Operations Manager flagged Ms. Hatch down and refused to let her sit down until her accommodation was approved.

151. At this point, Ms. Hatch's pregnancy was visible.

152. Ms. Hatch was forced to complete her shift while standing, which made her lightheaded and caused her severe abdominal pain.

***Amazon Unlawfully Retaliates Against Ms. Hatch for Taking Protected Breaks***

153. On about four occasions between February and March of 2025, Ms. Hatch clocked out of work early to go to the emergency department of the hospital due to pregnancy-related abdominal pain. Ms. Hatch feared for her own health and her pregnancy, given her pregnancy's high-risk designation. On each of these occasions, Ms. Hatch informed an Amazon site-level manager of her pregnancy and medical need to leave work. Amazon deducted UPT from her balance on each of these occasions.

154. On or about March 21, 2025, Ms. Hatch attempted to enter the worksite, but her badge was denied, without reason or explanation. For about two weeks, Ms. Hatch was unsure if she was still employed by Amazon.

155. On or about April 2, 2025, Amazon sent Ms. Hatch an email notice firing her pursuant to its Punitive Attendance Policy. When Ms. Hatch asked for information, a Human

Resources employee reviewed her records and explained that she had been fired because of her negative UPT balance.

156. Ms. Hatch appealed her termination immediately. Amazon denied her appeal without explanation.

157. Ms. Hatch was well qualified to work in customer returns and could easily have performed her usual tasks while seated in a chair during her requested breaks from standing, and was further willing to be transferred to other work paths within the customer returns department to process lighter items or to perform other tasks that would not involve standing for long periods of time.

158. Ms. Hatch timely filed a Charge with the EEOC on May 27, 2025.

159. On February 3, 2026, the EEOC issued a Determination finding reasonable cause that Defendant discriminated against Ms. Hatch by failing to provide her with an accommodation based on her pregnancy, in violation of the PWFA. The EEOC also found that Defendant "has discriminated against a nationwide class of female warehouse associates, based on their pregnancy, by failing to accommodate their limitations related to pregnancy, childbirth, and or related medical conditions, and in some instances forcing them to take leave, in violation of the PWFA."

160. On August 26, 2026, the EEOC issued Ms. Hatch a Notice of Right to Sue.

161. This Complaint has been filed within 90 days of receipt of that Notice.

162. Ms. Hatch seeks reinstatement as well as all other proper and available relief requested herein.

***<u>Dazaria Parks</u>***

163. Amazon hired Ms. Parks on or around April 29, 2025, as a delivery associate at Amazon's DRO2 Delivery Station in Rochester, NY. Ms. Parks' role involved standing continuously for 10- to 12-hour-long overnight shifts, scanning and lifting heavy packages, and climbing ladders.

164. On or about January 19, 2026, Ms. Parks found out she was pregnant.

165. Ms. Parks' doctor also diagnosed her with pregnancy-related sciatica, which has caused her progressively severe pain over the course of her pregnancy.

166. Ms. Parks is currently pregnant.

***Amazon Violates Ms. Parks' PWFA Rights By Demanding Medical Documentation for Predictable Assessments***

167. On or around about February 9, 2026, Ms. Parks approached an Amazon Human Resources (HR) employee to request accommodations for her pregnancy related sciatica, including additional 15-minute breaks to use the bathroom; the ability to change positions between standing and sitting; lifting, pulling, or pushing no more than 20 pounds; and excusal from climbing or full bending.

168. The HR employee instructed Ms. Parks that she must complete Amazon's A-Z mobile application and submit medical documentation to request pregnancy accommodations.

169. Ms. Parks complied with this requirement, submitting documentation on or about February 13 from her medical provider to accompany her accommodation request on the A-Z app.

170. For more than two months, Amazon ignored Ms. Parks' accommodation request, despite her repeated follow-up.

171. From February through April of 2026, Ms. Parks repeatedly asked site-level managers for breaks and a seat, informing them that her accommodation request was still pending. Despite the PWFA's requirements and the clarity of the EEOC's regulations, managers refused and continued to prohibit Ms. Parks from sitting down.

172. Some managers would encourage her vaguely to "take it easy" and "do the lighter packages," but nearly all of the packages in Ms. Parks' department weighed more than 20 pounds, and all required bending to pick them up. Moreover, when Ms. Parks attempted to only lift lighter packages and leave behind packages that were unsafe for her to lift, the automated system monitoring Ms. Parks' workstation would notify site-level managers that she had failed to complete all of her packages and managers would reprimand her. As a result, Ms. Parks continued lifting packages that violated her pregnancy-related restrictions and began to experience increasingly severe back pain at work.

173. Throughout this period, there were other work assignments at Ms. Parks' facility that would have allowed her to sit as needed and respect her pregnancy-related mobility limitations. Although Ms. Parks was qualified to work in both positions, Amazon did not transfer her to either role.

174. On or about April 28, Amazon finally notified Ms. Parks via email that it had approved her accommodation requests. However, aside from allowing Ms. Parks to take three additional 15-minute breaks per shift, her worksite made no adjustments to her job assignment or duties in accordance with her approved accommodation. Ms. Parks' back pain worsened progressively.

***Amazon Unlawfully Retaliates Against Ms. Parks for Taking Protected Breaks***

175. On or about February 24, 2026, Ms. Parks was hospitalized for intense cramping related to her pregnancy. After missing her shift that day, Ms. Parks promptly presented a doctor's note to her Amazon supervisor upon her return explaining her absence was caused by a pregnancy-related hospitalization. Amazon nevertheless deducted UPT from Ms. Parks' balance for the missed shift. Amazon refused to refund the UPT despite Ms. Parks' request to HR and submission of a doctors' note.

176. On or about June 15, 2026, Ms. Parks began to experience shooting pains in her back. Her doctor concluded that her inappropriate work assignments were severely aggravating her pregnancy-related sciatica. Ms. Parks could have continued working safely had Amazon honored her lifting and mobility restrictions. It did not. Ms. Parks spoke to her doctor who said that if Amazon continued refusing to accommodate her, she should be provided short-term excused leave for her health and the health of her pregnancy.

177. Ms. Parks uploaded her doctor's note to the A-Z app on or about June 19 and began taking leave on or about July 1.

178. Amazon deducted UPT from Ms. Parks while she was on leave. Amazon sent Ms. Parks repeated Termination Warning Emails during her leave. Ms. Parks responded to each email explaining clearly that her pending leave of absence was related to pregnancy complications, and that she had already submitted an official request along with a doctor's note.

179. On or about July 13, 2026, terminated Ms. Parks' employment pursuant to its Punitive Attendance Policy, sending her an automated email notifying her that she was fired for her negative UPT balance.

180. Ms. Parks promptly appealed her termination to explain her circumstances. Amazon rejected her appeal.

181. Ms. Parks timely filed a Charge with the EEOC on September 2, 2026.[35]

182. Ms. Parks seeks reinstatement as well as all other proper and available relief requested herein.

**Class Allegations**

183. Plaintiffs[36] seek prospective injunctive relief on behalf of a national class (the "National Injunctive Relief Class") and New York State sub-class (the "New York Injunctive Relief Class") under Fed. R. Civ. P. 23 (b)(2), and damages relief on behalf of a national class (the "National Damages Class") and New York State sub-class (the "New York Damages Class") under Fed. R. Civ. P. 23(2) and (b)(3).

184. **National Class Under Fed. R. Civ. P. 23(b)(2) ("National Injunctive Relief Class")**: Plaintiffs seek prospective injunctive relief on behalf of themselves and all persons similarly situated in the United States who: (a) are or will be employed by Defendant, (b) who are or will be pregnant, (c) who have or will have pregnancy-related limitations, and (d) who have sought or will seek reasonable accommodations for those limitations. Plaintiffs also seek prospective injunctive relief on behalf of a sub-class of the National Injunctive Relief Class who are or will be employed by Defendant in the State of New York (the "New York Injunctive Relief Class").

185. **National Damages Class Under Fed. R. Civ. P. 23(b)(3) (the "National Damages Class")**: Plaintiffs seek damages on behalf of themselves and all persons similarly

[35] Ms. Parks' Charge remains pending with the EEOC and 180 days have not yet elapsed since its filing. *See* 29 CFR § 1601.28(a)(1). Once that period ends, Ms. Parks will request the EEOC issue her a Notice of Right to Sue and will seek to amend this Complaint to add her PWFA claims.

[36] For purposes of describing the federal claims in this section of the Complaint, "Plaintiffs" refers to Plaintiffs Barclay and Hatch; on amendment, these Causes of Action shall include Plaintiffs Green and Parks.

situated in the United States who, within the statute of limitations, (a) are or have been employed by Defendant Amazon, (b) have sought or will seek reasonable accommodations from Amazon due to pregnancy-related limitations, and (c) have been subjected to Amazon's unlawful policies and procedures as described herein. Plaintiffs also seek damages on behalf of a sub-class of the National Damages Class who are or have been employed by Defendant Amazon in the State of New York (the "New York Damages Class").

186. Plaintiffs are members of the National Class that they seek to represent.

187. The Class Members identified herein are so numerous that joinder of all members is impracticable. Amazon employs over 1.5 million employees nationwide, hundreds of thousands of workers in warehouses across the country, and thousands of hourly warehouse employees in New York.

188. Questions of law and fact are also common to the Classes because they pertain to a specific set of policies and practices adopted by corporate and senior management and applied by Amazon's central human resources department to employees at warehouses nationwide, including in New York state. Questions of law and fact common to members of the Classes are:

a. Whether Amazon automatically demands medical documentation for all reasonable accommodation requests, including predictable assessments requested by pregnant workers;

b. Whether Amazon's policy of automatically requiring medical documentation for pregnancy-related reasonable accommodations in the form of predictable assessments violates the PWFA;

c. Whether Amazon subjects hourly pregnant warehouse workers to UPT deductions when they take breaks and/or are absent due to pregnancy-related conditions/limitations;

d. Whether Amazon subjects hourly pregnant warehouse workers to TOT accruals when they take breaks during a shift due to pregnancy-related conditions/limitations;

e. Whether Amazon's centralized absence control system contains any mechanism to determine whether pregnant workers' breaks or absences are protected by the PWFA;

f. Whether Amazon maintains a policy, pattern, or practice of subjecting hourly, pregnant warehouse workers to UPT deductions when they take a break or are absent, regardless of whether those breaks or absences are protected by applicable law;

g. Whether Amazon maintains a policy, pattern, or practice of subjecting hourly, pregnant warehouse workers to TOT accruals when they take a break during a shift, regardless of whether those breaks are protected by applicable law;

h. Whether Amazon terminates workers covered by the PWFA who have negative UPT balances or positive TOT accruals due to pregnancy-related conditions and limitations, because of their negative UPT balance or positive TOT accrual;

i. Whether Amazon threatens workers covered by the PWFA who have negative UPT balances due to pregnancy-related limitations that they are facing potential termination, via the Termination Warning Emails;

j. Whether Amazon threatens workers covered by the PWFA whose TOT thresholds exceed a certain amount per pay period that they are facing potential discipline and/or termination, via Final Warning Emails;

k. Whether Amazon's Punitive Attendance Policy, involving UPT deductions, Termination Warning Emails, and Final Warning Emails triggered by the UPT and TOT Policies, is retaliatory;

l. Whether Amazon's Punitive Attendance Policy, involving UPT deductions, Termination Warning Emails, and Final Warning Emails triggered by the UPT and TOT Policies, interferes with pregnant workers' exercise of rights under the PWFA;

m. Whether Amazon's policies and practices chill pregnant workers who need reasonable accommodations in their exercise of their rights; and

n. Whether Amazon's Punitive Attendance Policy has the purpose or continuing, known effect of discouraging pregnant workers from requesting predictable assessments or using previously-approved accommodations for fear of retaliation.

189. For the New York Classes, common questions of law and fact include:

a. Whether Amazon deducts UPT hours from a pregnant worker's limited UPT bank for their pregnancy-related absences and disciplines and threatens them with termination per its Punitive Attendance Policy, in violation of the NYLL; and

b. Whether Amazon's centralized absence control system contains any mechanism to determine whether pregnant workers' absences are protected by the NYLL.

190. Plaintiffs' claims are typical of the claims of the Class Members. Specifically, Plaintiffs were hourly Amazon employees in the State of New York who needed accommodation

for pregnancy-related conditions, sought such reasonable accommodations, including predictable assessments, and were subjected to and harmed by Amazon's unlawful policies and practices; their claims are based upon allegations that they have been adversely affected by those policies and practices in that they had requests for predictable assessments delayed and denied due to Amazon's demand for medication documents and they faced discipline, threats, and termination for legally protected absences; and their claims rest on proof and legal theories common to all Class Members.

191. Plaintiffs Barclay, Green, Hatch, and Parks, as Representative Plaintiffs, will fairly and adequately represent and protect the interests of the Class Members because: (1) they are willing and able to represent the proposed class and have every incentive to pursue this action to successful conclusion; (2) their interests are not antagonistic to those of the other class members; and (3) they are represented by counsel experienced in litigating major class actions in the field of employment discrimination and disability rights.

192. Class certification is appropriate under to Fed. R. Civ. P. 23(b)(2) because Amazon has acted or refused to act on grounds that apply generally to the National Injunctive Class and New York Injunctive Relief Class so that final injunctive relief or corresponding declaratory relief is appropriate.

193. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the National Damages Class and New York Damages Class predominate over any questions affecting individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## FIRST CAUSE OF ACTION

**Failure to Accommodate in Violation of the Pregnant Workers Fairness Act ("PWFA")**
**42 U.S.C. § 2000gg *et seq***
**(On Behalf of Plaintiffs, National Injunctive Class Members, and National Damages Class Members)**

194. Plaintiffs repeat and reallege the foregoing factual allegations as if the same were fully set forth at length herein.

195. As set forth herein, Plaintiffs and Class Members were at all times relevant to this action employees, and Defendant an employer and covered entity, as defined by 42 U.S.C. § 2000gg *et seq.*

196. The PWFA requires employers to provide reasonable accommodations for known limitations related to pregnancy, childbirth, or related medical conditions, unless such accommodations would impose an undue hardship.

197. "An unnecessary delay in providing a reasonable accommodation to the known limitations related to pregnancy, childbirth, or related medical conditions of a qualified employee may result in a violation of the PWFA if the delay constitutes a failure to provide a reasonable accommodation."[37]

198. Plaintiffs and Class Members had temporary, known limitations related to pregnancy, as alleged within this Complaint, requiring reasonable accommodations.

199. Predictable assessments, as described in this Complaint, are inherently reasonable accommodations for pregnancy and pregnancy-related limitations and must be granted without medical documentation.

200. Plaintiffs and Class Members sought or will seek predictable assessments to accommodate pregnancy-related limitations.

[37] 42 U.S.C. § 2000gg-1(1) and § 1636.4(a)(1).

201. Defendant violated and continues to violate the PWFA by unreasonably demanding medical documentation for predictable assessment requests by Plaintiffs and Class Members and not providing the requested accommodation pending receipt of medical documentation, constituting unlawful delay under the PWFA. *See* 42 U.S.C. § 2000gg-1(1) and § 1636.4(a)(1).

202. All the acts and omissions committed by Defendant described herein for which liability is claimed were done intentionally, unlawfully maliciously, wantonly, recklessly, negligently, and/or with bad faith and said acts meet all of the standards for imposition of punitive damages.

203. The National Injunctive Class Members under Rule 23(b)(2) are entitled to injunctive and declaratory relief, as well as reasonable attorneys' fees, costs, and disbursements.

204. The National Damages Class Members under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

## SECOND CAUSE OF ACTION

**Retaliation in Violation of the Pregnant Workers Fairness Act ("PWFA")**
**42 U.S.C. § 2000gg *et seq***
**(On Behalf of Plaintiffs, National Injunctive Class Members, and National Damages Class Members)**

205. Plaintiffs repeat and reallege the foregoing factual allegations as if the same were fully set forth at length herein.

206. As set forth herein, Plaintiffs and Class Members were at all times relevant to this action employees, and Defendant an employer and covered entity, as defined by 42 U.S.C. § 2000gg *et seq.*

207. Under the PWFA, covered employers may not "take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee." 42 U.S.C. § 2000gg-1(5). *See also* Enforcement Guidance on Retaliation at (II.A.2.e).

208. Plaintiffs and Class Members requested reasonable accommodations for their pregnancy and/or pregnancy-related limitations.

209. Plaintiffs and Class Members' requests for reasonable accommodation caused Amazon to take adverse employment actions against them by applying its Punitive Attendance Policy, leading to disciplinary action and/or termination.

210. Amazon would not have taken these punitive measures absent Plaintiffs and Class Members' pregnancy-related requests for reasonable accommodations under the PWFA.

211. All the acts and omissions committed by Defendant described herein for which liability is claimed were done intentionally, unlawfully maliciously, wantonly, recklessly, negligently, and/or with bad faith and said acts meet all of the standards for imposition of punitive damages.

212. The National Injunctive Class Members under Rule 23(b)(2) are entitled to injunctive and declaratory relief, as well as reasonable attorneys' fees, costs, and disbursements.

213. The National Damages Class Members under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

## THIRD CAUSE OF ACTION
**Intimidation and Interference in Violation of the Pregnant Workers Fairness Act ("PWFA") 42 U.S.C. § 2000gg-2(f)(2) (On Behalf of Plaintiffs, National Injunctive Relief Class Members, and National Damages Class Members)**

214. Plaintiffs repeat and reallege the foregoing factual allegations as if the same were fully set forth at length herein.

215. As set forth herein, Plaintiffs and Class Members were at all times relevant to this action employees, and Defendant an employer and covered entity, as defined by 42 U.S.C. § 2000gg *et seq.*

216. Under the PWFA, it is "unlawful [for an employer] to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of such individual having exercised or enjoyed, or on account of such individual having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 2000gg-2(f)(2).

217. Amazon maintains a policy of sending threatening, disciplinary emails to employees who reach negative UPT balances, the Termination Warning Emails. Amazon also maintains a policy of sending Final Warning Emails to employees who exceed a TOT threshold. The Termination Warning Emails and Final Warning Emails, demanding that employees promptly justify their absences or face termination, serve to intimidate and threaten employees who have exercised their rights to request reasonable accommodation, including those who have accrued negative UPT balances or positive TOT accruals because they took breaks or leave while awaiting their accommodation to be approved.

218. These Punitive Attendance Policies have a reasonable tendency to chill pregnant workers from exercising their rights under the PWFA, constituting unlawful intimidation and

interference. The purpose, or the continuing known effect, of the Punitive Attendance Policies is to discourage pregnant workers from requesting accommodations guaranteed under the PWFA.

219. Amazon's Medical Documentation for Predictable Assessment Policy also has a reasonable tendency to chill pregnant workers from exercising their rights under the PWFA, constituting unlawful intimidation and interference.

220. Plaintiffs and, upon information and belief, Class Members with pregnancy-related limitations who receive these communications, credibly believe that these emails can, and do, lead to termination.

221. As a result, Plaintiffs, National Injunctive Relief Class Members, and National Damages Class Members reasonably believe they risk discipline and termination each time they request pregnancy-related reasonable accommodations or take legally protected breaks for pregnancy-related needs, which interferes with workers requesting or using reasonable accommodations.

222. Thus, Defendant violates the PWFA by interfering with Plaintiffs and Class Members' exercise or enjoyment of a right protected by the PWFA.

223. Defendant acted in willful and/or reckless disregard of Plaintiffs' and Class Members' protected rights to be free from coercion and interference, warranting the imposition of punitive damages.

224. The National Injunctive Class Members under Rule 23(b)(2) are entitled to injunctive and declaratory relief; as well as reasonable attorneys' fees, costs, and disbursements.

225. The National Damages Class Members under Rule 23(b)(3) are entitled to compensatory and punitive damages, as well as reasonable attorneys' fees, costs, and disbursements.

**FOURTH CAUSE OF ACTION**
**Retaliation/Penalization for Lawful Absence**
**in Violation of the NYLL § 215(1)(a)**
**(On Behalf of Plaintiffs, New York Injunctive Class Members, New York Damages Class Members)**

226. Plaintiffs repeat and reallege the foregoing factual allegations as if the same were fully set forth at length herein.

227. Amazon is an employer under the definition set forth in NYLL § 2(6).

228. The NYLL makes it unlawful to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has used any legally protected absence pursuant to federal, local, or state law." NYLL § 215(1)(a)(viii).

229. The NYLL's provision against retaliation or penalization for legally protected absences specifies that such unlawful penalties include "assessing any demerit, occurrence, any other point, or *deductions from an allotted bank of time*, which subjects or could subject an employee to disciplinary action." NYLL § 215(1)(a) (emphasis added).

230. For Plaintiffs and other members of the New York Class, Amazon deducted UPT hours from their limited UPT bank for their pregnancy-related absences and threatened them with termination per its attendance policy.

231. Defendant thereby retaliated against Plaintiffs and against all members of the New York Class whose UPT was or is deducted while they were absent from work due to pregnancy-related reasons in violation of NYLL § 215(1)(a).

232. The New York Injunctive Relief Class Rule 23(b)(2) is entitled to injunctive and declaratory relief, as well as reasonable attorneys' fees, costs, and disbursements.

233. The New York Damages Class under Rule 23(b)(3) is entitled to compensatory, punitive, and liquidated damages, as well as reasonable attorneys' fees, costs, and disbursements.

**FIFTH CAUSE OF ACTION**
**Discrimination in Violation of the Pregnant Workers Fairness Act ("PWFA")**
**42 U.S.C. § 2000gg *et seq***
**Failure to Accommodate and Forced Unwanted Accommodation**
**(On Behalf of Plaintiffs Barclay and Hatch)[38]**

234. Plaintiffs Barclay and Hatch repeat and reallege the foregoing factual allegations as if the same were fully set forth at length herein.

235. As set forth herein, Plaintiffs Barclay and Hatch were at all times relevant to this action employees, and Defendant an employer, as defined by 42 U.S.C. § 2000gg *et seq*.

236. The PWFA requires employers to provide reasonable accommodations for known limitations related to pregnancy, childbirth, or related medical conditions, unless such accommodations would impose an undue hardship.

237. The PWFA also makes it unlawful for a covered employer to fail to "make reasonable accommodations" for pregnant workers or to require pregnant works to accept any accommodation "*other than any reasonable accommodation arrived at through the interactive process*." 42 U.S.C. § 2000gg-1 (emphasis added). Employers cannot require employees to take leave or accept accommodations without engaging in an interactive process to find suitable solutions. *See* 42 U.S.C. §§ 2000-gg(2), (4).

238. Plaintiffs Baclay and Hatch had temporary, known limitations related to pregnancy, as alleged within this Complaint, requiring reasonable accommodations. Plaintiffs Barclay and Hatch requested reasonable accommodations in order to remain on the job.

239. Defendant violated the PWFA by refusing to provide Plaintiffs Barclay and Hatch, otherwise qualified individuals whose ability to perform the functions of their jobs were temporarily affected by pregnancy-related conditions, with reasonable accommodation or by

[38] Plaintiffs Green and Parks will seek to amend this Complaint and add individual PWFA claims after 180 days have lapsed since the filing of their EEOC Charges and they receive Right to Sue letters.

delaying implementation of approved accommodation requests such that the request was constructively denied. *See* 42 U.S.C. § 2000gg-1(1) and § 1636.4(a)(1).

240. Defendant also violated the PWFA by failing to engage in an interactive process with Plaintiffs Barclay and Hatch to identify potential accommodations that could overcome their pregnancy-related limitations without posing undue hardship to the company.

241. As a result of Defendants' unlawful practices, Plaintiffs Barclay and Hatch have suffered significant monetary loss, including loss of earnings and other benefits; physical and emotional pain and suffering; and other nonpecuniary losses.

## PRAYERS FOR RELIEF

WHEREFORE, based upon the foregoing allegations, Plaintiffs respectfully petition this Court for judgment as follows:

a. Declare that Amazon committed the acts or omissions set forth in this Complaint and that such acts or omissions constitute violations of the PWFA and NYLL;

b. Enjoin Amazon, its officers, agents, and employees from engaging in further discriminatory and retaliatory practices, including by affirmatively ordering Amazon to modify its policies, practices, and procedures as necessary to ensure its practices and procedures do not discriminate against pregnant employees;

c. Award compensatory damages, liquidated damages, and punitive damages to Plaintiffs, Rule 23(b)(3) Class Members, and New York Damages Class Members in an amount to be determined at trial;

d. Award prejudgment interest on all amounts due to Plaintiffs and Rule 23(b)(3) Class Members, and New York Damages Class Members;

e. Order reinstatement of Plaintiffs and award them actual damages, including back pay, front pay, and compensation for past and future lost benefits, and actual, compensatory, and punitive damages;

f. Award attorneys' fees, costs, and disbursements to the fullest extent permitted by law; and

g. Direct such other and further relief as the Court may deem just and proper.

Dated: September 8, 2026
New York, New York

EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL, LLP

______________________________
Debra L. Greenberger
Rachael Wyant
1 Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 763-5000
dgreenberger@ecbawm.com
rwyant@ecbawm.com

A BETTER BALANCE

______________________________
Katherine Greenberg
500 7th Avenue, 8th Floor
New York, NY 10018
(212) 430-5982
kgreenberg@abetterbalance.org

*Attorneys for Plaintiffs and the Putative Classes*